IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RAYMOND DEPERRY,

                Plaintiff,                      OPINION AND ORDER

    v.

                                                  12-cv-123-wmc

LAWRENCE DERAGON, MICHAEL BABINEAU,
JEAN DEFOE, MARK DUFFY, DESIREE LIVINGSTON,
JEFFREY BENTON, and VERONICA WILCOX

                Defendants.

---

Asserting a claim pursuant to 42 U.S.C. § 1985(3), Raymond DePerry alleges in his amended complaint defendants fired him as the Executive Director of the Red Cliff Chippewa Housing Authority ("the Authority") as a result of their conspiracy to interfere with the civil rights of the Authority's tenants. Defendants, the Authority's seven-member Board of Commissioners, responded with the instant motion to dismiss that complaint for failure to state a legally-cognizable claim. *See* Fed. R. Civ. P. 12(b)(6). The court finds that DePerry's amended complaint contains no allegation or inference of a conspiracy to deprive anyone of civil rights, nor of any class-based animus held by defendants, and will therefore grant defendants' motion to dismiss.

BACKGROUND[1]

**A.   Conspiracy to Prevent Enforcement of NAHASDA**

The Red Cliff Band of Lake Superior Chippewa ("the Red Cliff Band" or "the Band") is a federally-recognized, autonomous Native American tribe located in Bayfield County, Wisconsin. The primary governmental functions of the Band are exercised through its Tribal Council under rules set forth in the Red Cliff Tribal Constitution. The Red Cliff Chippewa Housing Authority ("the Housing Authority") is a formal subunit of the Tribal Council, and is controlled by a seven-member Board of Commissioners ("the Board"). The Housing Authority is generally responsible for managing rental housing units located on the Red Cliff Band Reservation. Some of these units are subject to federal legislation passed on October 26, 1996 as Public Law 104-330, the Native American Housing Assistance and Self-Determination Act of 1996 ("the Act"), 25 U.S.C. § 4101 *et seq*.

The Board has the power to hire and fire employees of the Housing Authority. At the time of the incidents relevant to this complaint, the Board consisted of the seven defendants in this action: then Commissioners Lawrence Deragon, Michael Babineau, Jean Defoe, Mark Duffy, Desiree Livingston, Jeffrey Benton, and Veronica Wilcox.

On or around June 4, 2007, plaintiff Raymond DePerry was hired as the Housing Authority's Executive Director. DePerry's job responsibilities included processing the

---

[1]   For the purposes of this motion, the court will construe all of DePerry's factual allegations as true and draw all reasonable inferences in his favor. Fed. R. Civ. P. 12(b)(6); *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). The court has omitted some of DePerry's allegations to the extent they are plainly not relevant to his asserted legal claims.

2

"eviction of tenants in compliance with court order and directions from lawyer and owner." DePerry was also bound to comply with the Act and any associated regulations relevant to housing management. DePerry performed well as Executive Director, receiving glowing performance reviews in 2008 and 2009.

In January 2010, DePerry sought to evict an individual named Donald King, Jr. from reservation rental housing because of drug-related criminal activity. DePerry believed that he was obligated under the Act to evict Mr. King because he had a duty to preserve the health and safety of the other tenants. DePerry sought input from the Board and from an attorney, and then commenced eviction proceedings.

DePerry's eviction actions were unpopular with the Red Cliff Band Tribal Council, which passed a moratorium prohibiting the Housing Authority from pursuing any evictions, effective March 1, 2010, through April 5, 2010. DePerry alleges that this moratorium was the result of a "conspiracy" among certain members of the Tribal Council to restrain enforcement of the Act. He also alleges that the moratorium put the health and safety of the entire tenant population at risk, which consists primarily, if not entirely, of Native Americans who qualified for housing based on their racial and ethnic heritage.

### B. Conspiracy to Fire Raymond DePerry for Speaking Out against the Initial Conspiracy

On March 12, 2010, Raymond DePerry wrote a letter to the editor of The Daily Press in Ashland, Wisconsin, criticizing the moratorium and the Tribal Council. A complaint was then filed with the Board demanding DePerry's firing. On March 17,

3

2010, a special meeting of the Board decided not to discipline DePerry. Commissioner Lawrence Deragon issued its written decision the next day.

Tribal Chairperson Rose Gurnoe Soulier and Councilperson Marvin DeFoe still wanted DePerry fired. Under pressure, the Board convened a second special meeting on March 19, 2010, at which the Board again decided not to discipline DePerry. The Tribal Council then met on March 23, 2010, demanding that the Board's disciplinary process be resumed. As a result, the Board met for a third time on March 25, 2010, this time deciding to fire DePerry.

DePerry filed an appeal on March 30, 2010. On April 16, 2010, his appeal was heard by a "Personnel Selection Committee," which consisted of the same individuals sitting on the Board that fired him. On April 27, 2010, a decision was issued, affirming his firing. The members of the Board who voted to fire DePerry and to reject his appeal allegedly did so with the objective of furthering the conspiracy of the Tribal Council to prevent enforcement of the Act.

### C. Procedural History

Plaintiff Raymond DePerry filed his initial complaint on February 28, 2012, to which defendants responded with a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e). Despite some reluctance regarding the efficacy of granting 12(e) motions, the court found DePerry's complaint confusing enough to warrant an order to re-plead. In doing so, the court identified five claims that DePerry *might* be asserting based on the legal terminology used in the initial complaint, instructing DePerry to (1)

enumerate in his amended complaint each of his intended claims, (2) state whether he was suing defendants in their individual or official capacity, and (3) discard unrelated and confusing language and claims. On May 31, 2012, DePerry filed his amended complaint asserting a single claim for violation of 42 U.S.C. § 1985(3).[2] This amended complaint is the subject of defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

OPINION

To survive a motion to dismiss, a complaint "must plead factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (dismissal pursuant to Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief"). A plaintiff need not provide detailed factual allegations, but must provide "enough facts to raise [the claim] above the level of mere speculation." *Riley v. Vilsack*, 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009).

---

[2] DePerry's amended complaint mentions "retaliation" (dkt. #19 at ¶¶ 11, 63-64) and First Amendment rights (¶76), but the court finds that he has not come close to pleading a cause of action under the First Amendment. *First*, insofar as DePerry meant to bring such a claim, he ignored the court's instructions to comply with Federal Rule of Civil Procedure 10(b) by identifying this claim separately – at best, the reference to the First Amendment occurs only in passing, not as a distinct, identifiable claim. *Second*, there can be no remedy against these defendants under 42 U.S.C. § 1983 for deprivation of a federal right, for tribal officials do not act "under color of state law" within the meaning of §1983.

Section 1985(3), upon which DePerry's sole claim depends, reads in pertinent part:

> *Depriving persons of rights or privileges* -- If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation . . . .

42 U.S.C. § 1985(3).

The court finds that DePerry has failed to state a legally cognizable claim. DePerry's allegations do not suggest that the goal of either the primary or derivative conspiracy was to deprive some person or persons of equal protection under the law. In other words, DePerry does not plausibly allege that anyone in the conspiracy sought to apply the law differently to one class as compared to another. Instead, he suggests that an across-the-board refusal to enforce a law aimed at benefitting a particular class can, by itself, deprive the class of the equal protection of the law. DePerry fails to support this legal proposition with a single case citation.

Also absent is any plausible allegation of class-based animus. As the Supreme Court emphasized in *Griffin v. Breckenridge*, the protections of § 1985(3) were not "intended to apply to all tortious, conspiratorial interferences with the rights of others, [but instead require] . . . some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. 88, 101-02 (1971). In

6

other words, defendants must have been motivated by hostility toward a particular class of persons based on sex, religion, ethnicity or political loyalty. *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir. 1988). In addition, "it does not suffice for application of § 1985(3) that a protected right be incidentally affected. A conspiracy is not 'for the purpose' of denying equal protection simply because it has an effect upon a protected right. The right must be 'aimed at'; its impairment must be a conscious objective of the enterprise." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275 (1993) (quoting *United Brotherhood of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983)).

The allegations in the amended complaint suggest that the Tribal Council's decision to suspend the Authority's powers to evict tenants may have been motivated by a dislike for DePerry's actions taken pursuant to the Act and its rules, perhaps even a willful desire to subvert the Act itself. But the allegations do not plausibly assert -- or even imply -- that the Tribal Council was motivated by hostility toward the law-abiding tenants on the reservation. Still less can the court draw the inference that the Council was motivated by invidious hostility against the tenants *as a class* -- whether defined as "Native Americans" or "Red Cliff Chippewa" or even "law-abiding tenants."

DePerry argues that because the Act primarily affects and benefits Native Americans, any effort to interfere in the administration of a housing program sponsored under the Act -- for any purpose -- naturally gives rise to the inference of an anti-Native American motivation. Even in the permissive context of a 12(b)(6) motion, where all reasonable inferences are made in favor of the plaintiff, this is a frivolous argument, supported neither by common sense nor case support. In the absence of an invidious

motivation, there can be no § 1985(3) claim, and defendants' motion to dismiss must be granted.

## ORDER

IT IS ORDERED that:

(1) defendants' motion to dismiss for failure to state a cognizable legal claim (dkt. #25) is GRANTED;

(2) defendants' motion for a status conference (dkt. #32) is DENIED as moot; and

(3) this case shall be dismissed with prejudice.

Entered this 16th day of July, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge